IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

---

| | |
|---|---|
| JAMES CLEM,                                 )<br>                                                       )<br>　　　　　Plaintiff,                      )<br>                                                       )<br>vs.                                               )<br>                                                       )<br>                                                       )<br>G. LOMELI, California Correctional )<br>officer in his individual capacity      )<br>                                                       )<br>　　　　　Defendant.                 )<br>                                                       )<br>_____) | Case No. 2:05-cv-02129-JKS<br><br>Ruling on Matters of Trial<br>Procedures and  Evidence |

JURISDICTION

James Clem having been convicted of state offenses in California is currently confined at

the Mule Creek State prison, a California state prison facility.    He brings this action against G.

Lomeli, a guard at that institution pursuant to 42 U.S.C. § 1983, alleging a violation of his civil

rights under the Eighth Amendment to the United States Constitution made applicable to the

states by the Fourteenth Amendment.  Specifically, Clem alleges that Lomeli was deliberately or

consciously indifferent to a serious risk of harm to Clem from a fellow inmate, his cellmate

John  Godman.  *See Farmer v. Brennan,* 511 U.S. 825 (1994).  This court has jurisdiction. 28

U.S.C. § 1343.

INMATE PRISONER PLAINTIFF IMPEACHMENT BY CONVICTIONS

Clem is currently serving time for conviction of second degree murder, false

imprisonment, terrorist threats and possession of a firearm by a felon arising out of proceedings

1

culminating in a judgment in 1998.  He seeks an order in limine precluding admission of these convictions pursuant to Fed. R. Evid. § 609 interpreted in light of Fed. R Evid. § 403 on the theory that the probative value of his convictions on the issue of Clem's credibility for impeachment is outweighed by the prejudice that these violent crimes would present to the jury's evaluation of other issues in the case.  The burden of demonstrating that the conviction survives the balancing test imposed by Rule 609 is on the party seeking to introduce the conviction. *United States v. Hendershot*, 614 F.2d 648, 652-53 (9th Cir. 1980).  Generally, where convictions are admissible under Rule 609 only the name of the conviction, its date and the sentence imposed is put in evidence.  *See United States v. Estrada*, 430 F.3d 606, 620-21 (2nd Cir. 2005).

Rule 609(a)(1) states that for purposes of attacking the credibility of a witness:  (1) evidence that a witness other than the accused has been convicted of a crime shall be admitted subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted.

Incorporation of Rule 403 into Rule 609(a)(1) requires that evidence of prior convictions that are probative of the credibility of a  witness must be excluded if the District Court determines that the prejudicial effect of the convictions would substantially outweigh their probative value.  Congress included Rule 403 balancing into Rule 609 to overrule, in part, a decision of the United States Supreme Court in *Green v. Bock Laundry Machine, Co.*, 490 U.S. 504 (1989) (Federal Rules of Evidence require District Court to permit impeachment of a civil witness with evidence of prior felony convictions regardless of possible prejudice to the witness or to the party offering the testimony).  *See Tabron v. Lt. Grace, et al.*, 898 F.Supp. 293 (M.D. Pa 1995) (the significance of the change is underscored by a comparison to Rule 609(a)(2), which

mandates that evidence of convictions for crimes of dishonesty or false statement also shall be admitted, but contains no Rule 403 qualification). In *Tabron* the court concluded:

> In civil cases, courts rely on a number of factors in deciding whether to admit evidence under Rule 609(a)(1). *See* 1 McCormick on Evidence, § 42 at 144-45 n. 9 (4th ed. 1992). These include the nature of the convictions, the time that has elapsed since conviction, the importance of credibility to the underlying claim, and the potential for prejudice from admitting the convictions. The first three factors illuminate the inquiry into the probative value of the convictions. Once the probative value has been determined, it must be weighed against the fourth factor, the potential that the convictions will prejudice the jury against the Plaintiff. In short, these factors serve the balancing test required by Rule 403. (footnote omitted) 898 F.Supp. at 295.[1]

In this case the state does not seek to offer convictions for crimes of dishonesty or false statement. Rule 609(a)(2). Clem's  convictions are for crimes of serious violence which resulted in lengthy prison terms, the nexus with credibility is present but to no great extent.  Nine years has elapsed since the judgments were rendered and Clem has been incarcerated the entire time.  Clem is a pro se plaintiff claiming an Eighth Amendment violation.  His testimony is crucial to his case.  By the same token his credibility is central to his hopes for a verdict.  The court communicated to the parties its concern that the prejudice resulting from the introduction of

---

[1] In a criminal case where the defendant's testimony is to be impeached, the Ninth Circuit states a five factor test as follows:  1) the impeachment value of the prior crime; 2) the point in time of the conviction and the witness' subsequent history; 3) the similarity between the past crime and the charged crime; 4) the importance of the defendant's testimony; and 5) the centrality of the credibility issue. *United States v. Jimenez*, 214 F.3d 1095, 1098 (9th Cir. 2000) citing *United States v. Cook*, 608 F.2d 1175, 1185 n.8 (9th Cir. 1979) (en banc).  The test is virtually identical to the test for witnesses in civil cases cited above  except for factor 3 which would appear inapplicable in most civil cases.  The danger it addresses is the introduction of "propensity" evidence prohibited by Fed. R. Evid. 404 through the side door.   Where, however, a prisoner brings an Eighth Amendment excessive force claim and the defense is that the force was reasonable under the circumstances because of the plaintiff's violent behavior and plaintiff has a criminal history of violent crimes this factor might be relevant. The Ninth Circuit is clear that presence of factor 3 weighs against admissibility. *Jimenez*,  214 F.3d at 1098  n.2.

3

convictions for crimes of violence would outweigh the minimal relevance of such convictions on the issue of credibility. They therefore reached a compromise wherein the jury would be informed that Clem and each of his witnesses had been convicted of a "crime" but the precise crimes would not be identified. The court accepted this stipulation, Clem during his direct testimony acknowledged a felony conviction, and the jury received the Ninth Circuit pattern jury instruction on Rule 609.

The court of course has a duty to assure that due process is served, and that duty is not eliminated in the case of a stipulation.[2] Treatment of the convictions of Clem and his witnesses

---

[2] The court has treated the parties' stipulation as a factor but not a controlling one. The court's obligation to the public to see that trials are fair and that due process is assured to all parties merges with its duty to protect an unrepresented plaintiff from overreaching. The court recognizes that Fed. R. Crim. P. 46 requires the court to both disregard harmless errors and consider "plain errors" and that Fed. R. Civ. P. 61 speaks only to "harmless errors" and makes no special mention of "plain errors," but see Fed. R. Civ. P. 51(d)(2) (court may consider "plain error" in conjunction with jury instructions in civil cases). On balance the court believes that "plain error" should be recognized and avoided in civil cases as well as criminal cases.

At one time courts distinguished between plain error review and so called invited errors. An invited error occurred where the party objecting had introduced the evidence or requested the jury instruction upon which the claim of error rested. Since treatment of Rule 609 in this case was by stipulation the invited error rule would come into play. The Ninth Circuit addressed this problem in *United States v. Perez,* 116 F.3d 840 (9th Cir. 1997) (en banc). It concluded that where no objection was made to a ruling, the issue would be deemed forfeited and plain error review conducted, it was only where an error was both invited and "waived" would review be foreclosed. A waiver would require a knowing, intelligent and voluntary relinquishment of the right to appeal the error. *Id.* Citing *United States v. Olano,* 507 U.S. 725 (1993) (distinguishing between waivers and forfeitures as they affect appellate review of "plain errors"). In this case plaintiff is pro se, the court is unable to conclude that he thoroughly understood Rule 609 jurisprudence such that a waiver could be found. The court has therefore treated the stipulation as a forfeiture by both sides of the right to complain, and considered whether the stipulation is 1) error and 2) injures substantial rights. The court recognizes that there is some tension between *Olano supra* and *Ohler v. United States*, 529 U.S. 753 (2000) (Appearing to rely on "invited error" doctrine in holding that defendant "waives" Rule 609 violation by testifying and disclosing preemptively prior conviction to "remove the sting"); *Luce v. United States*, 469 U.S. 38 (1984) (defendant "waives" Rule 609 error by declining to testify and be impeached). In neither *Ohler* nor *Luce* was it clear that the defendant or his/her counsel knew that the right to review of the

4

as a "crime" without elaboration eliminates most potential prejudice.[3]  There is no risk of a

propensity inference and no risk that the jury will be less favorable to the witnesses than

knowledge that they are currently in prison would involve.[4]  Given that the felony convictions

have some probative value and the prejudice has been virtually eliminated, the court concluded

that the proposed stipulation is not error and therefore accepted it.[5]

---

alleged Rule 609 error was being lost by the action the defendant took.  It is not necessary to pursue this issue because this court's obligation to the public and to the parties is increased rather than decreased if review is foreclosed.  Certainly the court should not knowingly  permit an error which "seriously affects the fairness, integrity or public reputation of judicial proceedings. *See Perez*, 116 F.3d at 842-3

   [3] In *Perez* the court sought to avoid prejudice by not identifying the specific crime beyond calling it a felony involving a firearm.  Unfortunately, the defendant was on trial for being a felon in possession of a firearm which the court feared created a "propensity" danger.  Here the stipulation did not identify the crime at all.  In the absence of a focused argument, which would have been impermissible, suggesting that the "crime" involves dishonesty or false statement, it is unlikely that a juror would jump to that conclusion on his or her own.

   [4] In an Eighth Amendment case in which the plaintiff and his witnesses are known to be inmates, the jury will always know that they have been convicted of some crime.  The instruction says no more.

   [5] The court reached this conclusion after conducting the balancing of probative value against prejudice required by the rule.  This court does not have a general rule precluding the name of the crime. Compare *United States v. Estrada*, 430 F.3d 606, 615 (2nd Cir. 2005) (district court misapplied Rule 609(a)(1) by excluding evidence of the statutory names of felony offenses without conducting required balancing).  The Second Circuit is of course correct that the nature of the conviction does affect its importance in impeaching credibility, with crimes of dishonesty and false statement most relevant, and then a sliding scale through other felonies that involve stealth and planning down to crimes of violence, which the courts seem to view as having little relevance to credibility.  It is clear that any felony conviction involves a disrespect for law which has some impact on credibility.

EVIDENCE OF GOOD AND BAD CHARACTER

Evidence of a person's character, good or bad, may not be introduced to prove that a person acted in conformity therewith on a given occasion.  Fed. R. Evid. 404(a).  Thus in a civil right's case claiming excessive use of deadly force, a police officer defendant may not testify that he had never during a long career shot anyone else. *See Gates v. Rivera,* 993 F.2d 697 (9th Cir. 1993).

By the same token, any complaints of misconduct against the correctional officers, investigation of these complaints, any discipline imposed as a result of these complaints, any prior or subsequent civil lawsuits, any prior or subsequent CDC 602 reports, and prior or subsequent CDC 115 reports, or any evidence relating to either of the above-mentioned items involving any of the defendants would be inadmissible character evidence unless offered to prove something other than propensity to engage in similar conduct.

By the same token evidence of the bad character of a plaintiff where the only relevance is propensity is forbidden.  Thus in an excessive force case the defendant may not introduce evidence of past violent acts of the plaintiff unless they are relevant to some issue other than propensity to act in a violent manner. *See Heath v. Cast*, 813 F.2d 254, 259 (9th Cir.) *cert. denied*, 484 U.S. 849 (1987).  Nor may the defense offer evidence that the prisoner plaintiff is a vexatious litigant who engages in recreational litigation.  *See Outley v. City of New York*, 837 F.2d 587, 591-95 (2nd Cir. 1988) (applying Rule 404 balancing).  In this case neither side sought to present character evidence.

SHACKLING AND OTHER SECURITY PRECAUTIONS

Clem is a state prisoner challenging the conditions of his confinement.  He relies in part upon two fellow prisoners as witnesses.  Trial is to a jury.  Understandably both state and federal officers are concerned with courtroom security and the assurance that no party, witness or visitor will endanger anyone lawfully in the courthouse.  Reasonable steps to assure security may be in tension with Clem's right to a fair trial and his witnesses' right to be treated fairly.  The Court understands that Clem will be in street clothes during the trial but that his witnesses will be in jail uniforms and will be shackled during the proceedings.  The reasonableness of these security precautions are thus in issue.

The federal courts have given most of their attention regarding security concerns to criminal defendants standing trial.  Three important considerations are there implicated.  First, that the criminal process presumes that the defendant is innocent until proven guilty.  Requiring the defendant to appear in prison garb or to be shackled undermines the presumption of innocence and the related fairness of the fact finding process; second, the danger that court security will interfere with the right to counsel by hindering the defendant and his attorney in their communications; and finally, third, security measures including shackling may interfere with the maintenance of a dignified process including the respectful treatment of parties and witnesses, the importance of the decision making process and the gravity with which Americans consider any deprivation of an individual's liberty.  Routine use of shackles, for example, in the presence of juries would undermine these symbolic yet concrete objectives.  *See Deck v. Missouri*, 544 U.S. 622, 630-33 (2005).  Where the trial moves from the guilt to the penalty

phase in a capital case, the first consideration is less important though the jury still has to choose between life and death and accuracy in decision making is important.

Given these concerns the Supreme Court has held that a defendant may not be required to appear in prison clothes. *Estelle v. Williams*, 425 U.S. 501 (1976).  The Constitution forbids the use of visible shackles during the guilt and penalty phase unless the use is justified by an essential governmental interest such as courtroom security specific to the defendant on trial. *Holbrook v. Flynn*, 475 U.S. 560 (1986) (Constitutional right to fair trial is not impacted by additional uniformed security officers in courtroom).    If, after a case specific evaluation, it is determined that shackling is necessary, it may be ordered.  *Illinois v. Allen*, 397 U.S. 337 (1970).

The Ninth Circuit is in full compliance with these requirements and has extended them to situations beyond the criminal defendant at trial.  *See United States v. Howard*, 480 F.3d 1005 (9th Cir. 2007) (concluding that policy of shackling pre-trial detainees at preliminary hearings did not implicate policy); *Duckett v. Godinez*, 67 F.3d 734 (9th Cir. 1995) (jail clothes at sentencing do not violate prisoners rights, but shackling before jury does); *Tyars v. Finner*, 709 F.2d 1274, 1284-85 (9th Cir. 1983) (unconstitutional to compel the subject of a civil commitment hearing to wear restraints at trial without particularized safety concerns).  Court may require shackles where specific defendant has given cause to believe them necessary.  *Jones v. Meyer*, 899 F.2d 883 (9th Cir. 1990).  However, requiring defendant to appear in prison clothes or shackles before a judge in the absence of a jury does not implicate the constitution.  *See e.g. United States v. Zuber*, 118 F.3d 101 (2nd Cir. 1997).

This is a civil case and a number of the concerns that are present in a criminal case are absent.  There is no presumption of innocense.  The jury knows that in any Eighth Amendment

case the plaintiff is an inmate and soon learn that his witnesses are inmates.  On the other hand

the other considerations noted by the Supreme Court are in play.  In civil as in criminal cases the

right to a fair trial is fundamental.  *See Davidson v. Riley*, 44 F.3d 1118, 1122 (2nd Cir. 1995);

*Woods v. Thieret*, 5 F.3d 244 (7th Cir. 1993).  Many of the same concerns are present.  The

plaintiff and his witnesses should not be presented to the jury in a worse light than the

circumstances require.  The court should therefore, where the defense objects pre-trial to the

security measures, undertake a particularized investigation to assure itself that security

precautions do not unnecessarily impair plaintiff's ability to present his case and have the jury

evaluate that case free of distraction.  Here no pre-trial objection to security was presented.

Given that the plaintiff is pro se, this Court's obligation was to avoid plain error and assure due

process.  The jury knew that Clem and his witnesses were inmates in a maximum security

facility.  The testimony established that.  The Court gave a limiting instruction intimating that

government regulations and not individual dangerousness explained the court security and

informing the jury that it would be improper to reflect adversely on a witness' credibility because

of the security procedures employed.

Dated this 12th day of September 2007.


    /s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR
U. S. District Judge

9